Marshall, C. J.
 

 Nellie Moore was convicted in
 
 *488
 
 the probate court of Greene county, Ohio, on a charge of unlawful possession of intoxicating liquors, and was assessed a fine of $1,000. Before trial began, a motion was made to remove the case to some other court of competent jurisdiction on account of the bias of the probate judge. That motion was supported by an affidavit as follows:
 

 “Now comes Nellie Moore and objects to this court hearing this case, and requests the prosecutor to remove same to some other court of competent jurisdiction, for the reason that she believes that she will be unable to secure a fair trial before this court, for the reason that, on the day when she was arrested and gave bond, the judge of this court stated to her and her father that she had been hauling booze around here too long, and that he knew all about her, and he was getting tired of this thing being done by her, and by reason thereof he has made up his mind on the merit of the case.”
 

 The motion was overruled, and thereupon the defendant offered to introduce oral testimony in support of the motion, which the court also overruled, and exceptions were taken to both rulings. The case proceeded to trial, and after judgment was rendered, error was prosecuted to the court of common pleas, and later to the Court of Appeals, which courts approved the judgment. In this court the plaintiff in error relies solely upon the claim that the probate court was biased and prejudiced, that the objection was timely made, and that by being compelled to proceed before a biased judge she has been denied due process of law.
 

 An examination of the record discloses that the accused did not testify in her own behalf, and the
 
 *489
 
 testimony offered by the state was of the most conclusive nature. The legal questions involved are, however, of such importance as to challenge pur serious attention regardless of the question of guilt or innocence. The affidavit recites that the probate judge stated to her and her father at the time of her arraignment “that she had been hauling booze around here too long, and that he knew all about her, and he was getting tired of this thing being done by her.” The affidavit does not allege that the judge had stated that he had made up his mind on the merits of the case, but the accused declares, that he had so made up his mind. More serious than the allegations of the affidavit is the fact that the court refused to permit her to introduce testimony in support of the affidavit and motion for removal of the cause to some other court of competent jurisdiction. In the oral argument of the case in this court, it was stated by counsel for the state that the affidavit did not correctly report what the judge had said. Not being advised by the record as to what the judge may have said, it will be assumed that he said exactly what was stated in the defendant’s affidavit. However grossly the judge may have been misrepresented, he did not see fit to challenge the correctness of the affidavit, and no justification is apparent for refusing the defendant opportunity to offer further testimony upon the same issue.
 

 In the case of
 
 Tumey
 
 v.
 
 State,
 
 273 U. S., 510, 47 S. Ct., 437, 71 L. Ed., 749, 50 A. L. R., 1243, the Supreme Court of the United States for the first time declared that the disqualification of a judge constituted a violation of the due process clause of the Fourteenth Federal Amendment. That case was based
 
 *490
 
 solely on the question of the interest of the trial judge in the outcome of the cause, but it would be a very narrow interpretation of that opinion to hold that any other serious disqualification did not equally constitute a bar to a judge hearing and deciding a cause. The spirit of that decision is that any litigant is entitled to have his case heard and decided by an impartial tribunal. The following quotation from the opinion in the
 
 Tumey case
 
 is quite pertinent as showing the spirit of that decision:
 

 “The plea was not guilty and he was convicted. No matter what the evidence was against him, he had the right to have an impartial judge. He seasonably raised the objection and was entitled to halt the trial because of the disqualification of the judge # #
 

 Since the decision of the
 
 Tumey case
 
 by the United States Supreme Court, this court has had occasion in several cases to interpret that decision, and it was decided in the case of
 
 Tari
 
 v.
 
 State,
 
 117 Ohio St., 481, 159 N. E., 594, that the disqualification of a judge is waived, unless objection be made thereto at the earliest available opportunity, and, if known to the complaining party at or before the trial, and no objection is made in the trial court, the disqualification will be deemed to be waived. That decision was rendered December 21, 1927.
 

 The Supreme Court of Pennsylvania had the
 
 Tumey case
 
 under consideration in the case of
 
 Commonwealth
 
 v.
 
 Dabbierio,
 
 290 Pa., 174, 138 A., 679, decided June 25, 1927, wherein that court declared that the disqualification of the judge would not be considered where the point was not raised in the trial court. That decision received the concurrence
 
 *491
 
 of six of the seven judges. The Supreme Court of Mississippi, in the ease of
 
 Bryant
 
 v.
 
 State,
 
 146 Miss., 533, 112 So., 675, decided May 16, 1927, cited and commented upon the
 
 Tumey case,
 
 and declared the following syllabus:
 

 “Where defendant in prosecution in justice court for violating game laws failed to object to trial before justice of the peace, under Constitution 1890, Section 171, on ground that he was interested in outcome of prosecution in that his compensation depended on conviction, either before the trial or any time before the justice of the peace lost control of the judgment, defendant is in the attitude of having consented thereto and to have waived alleged disqualification.”
 

 In the instant case, while it does not appear, and we do not decide, that the judge was disqualified by reason of bias or prejudice or having prejudged the case, it does clearly appear that the defendant was not afforded the opportunity to offer testimony upon the point. ' We would not hold that a frivolous and unsupported claim of bias or preconceived judgment on the part of the judge or magistrate would
 
 ipso facto
 
 disqualify the judge, but we are unqualifiedly of the opinion that any one who asserts such a claim should be afforded an opportunity to support the claim by the introduction of testimony. While it would not be the duty of the judge to tamely submit to unfounded imputations upon his integrity, he should at least permit a record to be made, so that a reviewing court may determine whether or not there has been a trial before an impartial tribunal. It is needless to say that, if a clear case is made against the judge, or even a strong showing
 
 *492
 
 of bias or prejudice, the judge should voluntarily strike the affidavit or information from the files and let it be heard before some other tribunal of concurrent jurisdiction^
 

 It has been urged in argument that no provision has been made for the determination of an affidavit of prejudice against a probate judge by some other impartial tribunal. This fact is not by any means decisive of the controversy. It only makes it the more necessary that the judge should be careful not to undertake the determination of a controversy, where his disqualification is seriously brought in question.T It has been urged by counsel for the state that the mere filing of a claim of bias and prejudice is not sufficient, and with this view we are in hearty accord^ It would seriously interfere with the administration of justice if any unfounded claim would automatically take away the court’s jurisdiction. Our attention has been called to Section 11438, General Code, relating to the disqualification of petit jurors. The Legislature declared in that section that any suspicion of prejudice against or partiality for either, party may render a juror unsuitable, and further provides that the validity of such challenge shall be determined by the court, and be sustained if the court has any doubt as to the juror being entirely unbiased. It therefore appears that the claim of prejudice on the part of a juror in a civil case does not automatically cause his dismissal as a juror, but that there must be a determination of the fact.
 

 Section 13653, General Code, is even more significant. That section provides that a juror called to render service in a capital case is not automatically disqualified by reason of having formed or ex
 
 *493
 
 pressed an opinion as to the gnilt or innocence of the -accused. Where it appears that a juror has formed or expressed such opinion, the court must examine the juror under oath as to the grounds thereof, and, if the juror says that he believes he can render an impartial verdict notwithstanding such opinion, and the court is satisfied that such juror will render an impartial verdict on the evidence, the court may admit him as competent to serve as a juror. Manifestly, if a juror in a capital case is not
 
 ipso facto
 
 disqualified by having formed or expressed an opinion on the merits of the case, for a stronger reason a judge should not be held to be automatically disqualified by reason of having an opinion as to the guilt or innocence of the accused in a misdemeanor case. The legal training of the judge, as well as the integrity of one who has been chosen to a judicial position, should be a guaranty that he would be at least as competent to disregard a previously formed and expressed opinion as a juror.
 

 It follows from the foregoing discussion that error has intervened to the prejudice of the defendant in this cause by reason of the refusal of the trial court to admit evidence bearing upon the issue of his own alleged disqualification. The judgment will therefore be reversed and remanded for further proceedings.
 

 Judgment reversed.
 

 Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.